[*Note.*—The following case, decided at Tampa, March Term, 1856, was omitted in the last volume of the Reports on account of the record not having reached the Reporter until after the Reports were published.]

STEPHEN HOLLINGSWORTH, APPELLANT, vs. WM. HANDCOCK AND RIGDON BROWN, APPELLEES.

The distinction between a mortgage and conditional bill of sale set forth and declared.

Held that where a party who negligently and culpably stands by and allows another to contract on the faith of an understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has assisted in deceiving.

A party may set up in his answer special matter which will avail him as fully as if he had filed a plea embracing the same matter.

Appeal from a decree of the Circuit Court of the Southern Circuit for Hillsborough county.

Complainant filed his bill in the Court below, alleging that William Handcock, on the 22d October, 1845, lent him, complainant, four hundred dollars, and in order to secure the payment of the same they applied to Simeon L. Sparkman to draw an instrument of writing (intended to be a mortgage), to secure the payment of said sum; that said Sparkman, for the purpose aforesaid, drew a common bill of sale from complainant to said Handcock, of and to a negro girl named Harriet, about fourteen years of age, upon one leaf of a sheet of paper, and upon the other leaf of the same sheet he also drew a condition, to the effect that if complainant should pay the said sum of four hundred dollars with lawful interest, unto said Handcock, within twelve months after the date of said bill of sale, then the said bill of sale was to be null and void; that complainant signed and executed said bill of sale with the condition thereto, and delivered the same to said Handcock. The complainant also alleges that said negro girl, at the time of the execution of said bill of sale, was worth more than four hundred dollars, the sum alleged to have been borrowed, and that he could have sold her for more, but relying on his ability to redeem her, he preferred to borrow said sum than to sell said negro even for five hundred dollars; that shortly after, said Handcock, contrary to the wishes of complainant, took possession of said negro without accounting for her hire. The complainant also alleges that said Handcock being about to leave Hillsborough county before the expiration of the time limited for

the redemption of said negro, he, the said complainant, sent his son to request said Handcock to wait two days, to enable him, complainant, to procure the money to pay him, but that said Handcock refused to wait, and left the county before the expiration of the time and did not return until after the time had elapsed, so that complainant was deprived of the opportunity of paying said amount, until the time appointed for said payment had elapsed. Complainant also alleges that since the lapse of the time limited for the said payment, the said Handcock sold said negro to defendant Rigdon Brown, who has possession thereof, and that said Brown bought her with notice of the title by which she was held by said Handcock; that complainant has repeatedly applied to said Handcock to redeem said slave, and has offered to repay him the said sum of four hundred dollars with interest. The bill concludes with a prayer to redeem, and for an account of the hire since the said negro has been in the possession of defendants.

The answer of defendant Handcock alleges, that complainant represented to defendant that he was indebted to sundry persons who were threatening to sue, and unless he could raise the money to pay his debts he would be ruined; that he wished to obtain the price of said negro Harriet, and requested defendant to buy her. Defendant replied that he intended to purchase a boy with what money he had, and therefore did not wish to make the arrangement. Complainant rejoined that Harriet was an excellent girl and would suit him as well as a boy, and after much persuasion defendant offered four hundred dollars for said girl, advising complainant, at the same time, to go about and see if he could get more. Defendant further alleges, that on the next day complainant informed him that he could not get a better offer, and insisted that defendant should take the negro at the price, and thereupon it was

agreed that the defendant should discharge the debts which complainant owed to sundry persons, and pay to complainant the balance of said four hundred dollars in cash. It was then proposed by defendant, and agreed to by complainant, that in case the complainant desired it, he might have the said girl back at the same price, if the complainant would pay it within one year after the date of the purchase; that Simeon L. Sparkman, at the request of the parties, drew the bill of sale, which was signed, sealed and delivered to defendant on or about the 20th October, 1845, and defendant took possession of said girl Harriet, with the knowledge and consent of complainant. The bill of sale was on one leaf of a sheet of paper, and on the other leaf of the sheet were a few lines in the following words, viz : "State of Florida, Hillsborough county. The condition of the said bill of sale is such that if the said Stephen Hollingsworth shall, within one year from the date thereof, pay to the said William Handcock the value of the said girl, viz: four hundred dollars, with interest at eight per cent., then the said bill to be void and of none effect, otherwise to be in full force and virtue." But defendant says the said writing was not a condition of the contract or of the bill of sale, but was written by request of complainant with a view to get defendant to stand security, but complainant changed his mind before the writing was signed and insisted that defendant should purchase said girl, which defendant agreed to do ; that complainant signed the bill of sale, but did not sign the said writing either with or without the bill of sale, nor was the said writing signed by any one. Defendant says he did not leave Hillsborough county for Tallahassee until after the expiration of a year from the date of said bill of sale, and he denies that any application was made to him to wait until said complainant could obtain money to pay him.

The answer of Rigdon Brown admits that he purchased

from Handcock the negro girl in question, in the year 1850, and alleges that complainant was present at the time of said purchase, and both by his actions and words confirmed the opinion in the mind of defendant that he, complainant, had previously sold said negro to defendant Handcock; that on being interrogated as to the age of said negro, complainant gave her age; that at the time of the purchase by this defendant, said Handcock, in the presence and hearing of complainant, spoke of his having purchased said negro girl, and of the bill of sale which he had obtained for her from complainant, to all or any of which the complainant did not answer or raise any objection.

John Parker, a witness for complainant, testified that he was present at the transfer of the title to the negro girl. Harriet, from complainant to defendant Handcock. The transfer was a mortgage bill of sale, as witness understood it. Could not state what sort of an instrument Handcock understood it to be, but thinks he understood it as witness did.

Simeon L. Sparkman, a witness for complainant, testified that he knew of the agreement between the parties by which complainant bargained a negro girl to defendant Handcock. Handcock was to take up some accounts, and the balance was to be given in money to the amount of four hundred dollars. Complainant gave the bill of sale with the condition that if he paid the money in twelve months, with interest, he was to have the negro girl back. Witness drew the instrument on a whole sheet of paper, to-wit: the bill of sale on one leaf, and the condition on the other leaf. Complainant signed the bill of sale, to which witness was a subscribing witness, but the condition was not signed. The bill of sale and condition were delivered to defendant Handcock, but witness does not know of the delivery of the girl to any person. Witness further states that he did not know at that time that it was necessary for

either of the parties to sign his name to the condition, as it was only considered a condition to the bill of sale. In answer to a cross interrogatory, witness declares, "I did not say that Stephen Hollingsworth gave a mortgage; there was an instrument as described in my answer." Witness thinks the condition was, " that if Hollingsworth should pay Handcock four hundred dollars, the price of said negro girl, with eight per cent. interest, on or before the expiration of twelve months, then the bill of sale to be null and void, otherwise to remain in full force."

William R. Hollingsworth, a witness for complainant, testified that his father, the complainant, requested him to call and learn of Handcock if he would take the money for the negro girl, if he brought it to him during that week. Handcock said that the time was about out, that the money was to be paid, and that he should not bother himself any more about it after that day, and that he was going to Tallahassee in a few days.

J. M. Hayman, another witness for complainant, testified that complainant tendered to defendant Handcock five hundred dollars, and demanded the return of the negro girl. Handcock said to complainant is that according to our contract? This tender was made on the 22d of December, 1851. Some time before this, said Handcock said in the presence of complainant that he had bought the negro from complainant, who gave him a bill of sale, and that he, Handcock, agreed that if complainant returned the money in the course of one year, he, complainant, could take the negro back; that no money was tendered within the year, and that he, Handcock, had told complainant that by a certain time, which he had appointed to leave for Tallahassee, if complainant brought the money he could take the negro, and if he did not, he, Handcock, should keep her. Witness further stated that complainant made no reply.

344 SUPREME COURT,

Hollingsworth vs. Handcock and Brown.—Opinion of Court.

Thomas P. Kennedy, a witness for defendants, testified that complainant was owing himself and J. B. Allen for store accounts. Allen had sued or was about to sue ; that Handcock paid these debts and gave complainant money to pay other debts ; thinks the whole amount advanced was four hundred dollars ; that Harriet (the negro girl,) was pledged as security for paying that amount in twelve months, and if not paid in one year, the girl was Handcock's property. Does not think the girl was worth more than four hundred dollars. Witness thinks complainant offered to sell or mortgage the girl for four hundred dollars, and if the money was not paid in one year, it was then a *bona fide* sale.

Joseph Howell testified that he was present when defendant Handcock gave a bill of sale to defendant Brown for the negro girl Harriet. Complainant was also present ; he interposed no objection to the sale, but stated the age of said negro girl.

*J. T. Magbee* for Appellant.

*J. Gettis* for Appellee.

PEARSON, J., delivered the opinion of the Court.

This cause comes up upon appeal from a decree of the Circuit Court for Hillsborough county, sitting in Chancery.

The object of the bill is to redeem a slave called Harriet, therein alleged to have been mortgaged to the defendant Handcock, and by him sold to the defendant Brown ; while the defence set up by the answers is, that the transaction between Hollingsworth and Handcock constituted a conditional sale of the slave; that the instrument executed by Hollingsworth was not a security for money, and therefore not in the nature of a mortgage ; and that the complainant is estopped, by reason of his acquiescence in the sale from Handcock to Brown, from asserting any claim to

the property against Brown. These are the enquiries before us. They are questions of much difficulty, generally, and not without embarrassment in this particular case. We are materially aided, however, by the opinion on file of the Court below, wherein the legal questions are very fully and carefully considered in connection with the facts of this case.

On the 22d October, 1845, Hollingsworth executed his bill of sale, in the usual form, to Hancock, for the slave Harriet. This was written on one half of a sheet of paper, and on the other leaf of the same sheet there appeared a writing in the following words, to-wit:

"State of Florida, Hillsborough county. The condition of the above bill of sale is such, that if the said Stephen Hollingsworth shall, within one year from the date thereof, pay to the said William Handcock the valuation of the said negro girl, viz: four hundred dollars, with interest at eight per cent., then the foregoing bill of sale to be void and of none effect, otherwise to remain in full force and virtue."

This defeasance, however formal in its terms, was not subscribed by either of the parties to the bill of sale, yet it is contended that the circumstances developed in the testimony show that it is a true exponent of the intention of the parties, in regard to the nature of their contract.

The allegations in the bill and answer are variant and contradictory in reference to the true intent and meaning of the engagements the parties entered into with each other, and we are left therefore to seek in the facts and circumstances of the case their true purpose and legal effects. It is very obvious that the true question for our consideration is, whether this instrument and the agreement of the parties contemplated and were in fact a conditional sale. In that event, the title in Handcock becomes abso-

44

lute at the expiration of the period limited for the re-purchase, and consequently his sale to Brown conveyed a perfect title.   Such is the principle laid down by Chancellor Kent in his Commentaries, 4 vol. p. 144.   This able jurist further states, same vol. p. 142, that "in Equity the character of the conveyance is determined by the clear and certain intention of the parties," and to ascertain this intention we are not confined to an examination of the instrument itself, but may resort to other deeds, and extrinsic circumstances existing in parol.   1 Johns. Chy. Rep. 594; 1 Day, 133.   What then was the true intention of Hollingsworth and Handcock, at the time of the transfer of the girl Harriet to the latter?   Conditional sales will be supported when they are clearly the purpose of the parties.   Chief Justice Marshal, in Conway's Executor and Devisees vs. Alexander, 7 Cranch Rep. p. 218, says: " to deny the power of two individuals, capable of governing themselves, to make such contracts, would be to transfer to the Court of Chancery, in a considerable degree, the guardianship of adults as well as of infants."

There seems to have been no previous negotiations between the parties, nor any loan or debt due, or mortgage spoken of to secure a previous debt.   The connection of the parties commenced with the bill of sale from complainant to Handcock, which is absolute and unconditional in its terms.   Whether the form or memoranda of the defeasance written on another page of the same sheet of paper, but not executed by the parties, is to be taken as a part of the instrument itself, is not very material, since it must be taken for whatever it is worth in connection with other circumstances, in illustrating the intention of the parties.   Nor does it vary substantially, from the parol testimony in the case, as to the condition upon which the property was transferred.   In considering the effect of the testimony, it should be remembered that the parties acted in the first

instance without counsel, and the witnesses have spoken in plain, untechnical language, their knowledge of the transaction. It appears to us that the testimony of Simeon L. Sparkman, who, at the request of the parties, wrote both the bill of sale and the defeasance, and subscribed the first as a witness, is such as to show that the latter contained the intention and purpose of the parties as a condition to the former. He says that he "did not know at that time that it was necessary for either of the parties to sign the condition, as it was only considered a condition of the *sale*." Nor does it appear that any objection was made by either party to the execution of this condition ; they rather seem to have supposed it unnecessary to give validity to the instrument. It was delivered with the bill of sale by complainant to Handcock, and transferred in his presence, without objection on his part, by Handcock to Brown, at the time of the sale of the negro girl to him. To a cross-interrogatory, Sparkman replies: "I did not say Stephen Hollingsworth gave a *mortgage*," but only the instrument with the condition, as previously described. And he further states his recollection of the condition to the bill of sale to be, that in the event complainant should within twelve months pay "the *purchase* price" of the negro girl, he should "*have her back*." The phrase used in the written condition is to "pay to the said William Handcock the *valuation* of the said negro girl," etc. Taking, then, the whole testimony of Sparkman in connection with the instruments which he drew, and the superior opportunities which he had to know the purpose and intention of the parties in the transaction, it can hardly be doubted that a conditional sale was intended, with the privilege to "have her back" at the "valuation" or "purchase price" within twelve months. It is manifest from Sparkman's whole testimony that he contemplated nothing

but a sale with a condition, throughout.    And this view of the matter is corroborated by other facts and circumstances.

The transaction occurred at Tampa where the girl was not present, but in accordance with the legal effect of the bill of sale, she is very soon found in the possession of Handcock.   In case of a mortgage, the possession is usually retained by the mortgagor.

But the complainant acquiesced in the possession of the vendee, and witnessed, without objection or complaint, his sale of the girl to a third party long after the period had elapsed at which he had the privilege of getting her back by re-paying the purchase money.

He moreover sent his son to Handcock to enquire whether he would permit him to refund the purchase money at a day subsequent to that fixed in the original agreement, showing that he did not rely upon his right to redeem or re-purchase after that period; and Handcock, acting upon the same conception of his rights, refused to do so after his contemplated departure for Tallahassee.

In further corroboration of this view of the subject, it appears from the testimony of Thomas P. Kennedy that Handcock paid the full value of the girl by settling some debts for which the complainant was pressed, and paying the balance in cash.   And it is argued with some show of reason that if a loan only had been contemploted, the complainant would have contented himself with a sum sufficient to relieve his necessities without exacting a further sum to cover the whole value of his property; and in like manner if Handcock only contemplated a security for the money advanced, it is suggested that he would have sought a further security to guard against the loss of that which was named.   But instead of such a course, he took no note or other security for his money, and rested content with his bill of sale for the property.

Kennedy also states that complainant had offered to *sell*

or mortgage the negro girl for the sum of four hundred dollars, " and if the money was not paid in one year it was then a *bona fide* sale." And in another place, after stating his knowledge of the sale to Handcock and the sums advanced, he adds, "if not paid in one year, the girl Harriet was Handcock's property." J. M. Hayman, a witness examined by complainant to prove a tender of the sum advanced or paid by Handcock for the negro girl, fixed the date of the supposed tender on the 22d December, 1851, more than five years after the original transfer of the property, and says, on the occasion of the assumed tender, Handcock said to complainant, " Is that according to our contract ?" which implied allegation it does not appear the complainant denied ; and in his cross-examination he states that Handcock two days previously stated in the presence of complainant the whole history of his purchase of the negro girl, with the condition that complainant should have her back within a year provided he refunded the money advanced—that no money was tendered him within the year, and that he had informed the complainant that unless the money was brought before his departure for Tallahassee, he would keep the negro—to no portion of which statement does it appear the complainant objected or excepted.

. To the acts and admissions of the complainant as thus narrated, and the great length of time which he has allowed to elapse without any assertion of his claim, he gives no satisfactory explanation or reply.

In Scott vs. Britton, 2 Yerger, 215, it was held that " when a bill of sale is absolute on its face, it requires clear and satisfactory proof by parol to show that it was intended as a mortgage." We have no such proof in this case, and are therefore constrained to agree with the Court below in considering this a conditional sale, vesting, upon forfeiture of the condition, a perfect title in the purchaser.

There are many analagous cases in the reports, the au-

thority of which support the conclusion we have reached in this. Among them we refer to the case last quoted, and 5 Gill & John., 75; 2 Dev. & Bat., ch. 305; 7 Ala. Rep., 724; 5 Pike, 321; 4 B. Munroe, 496; 2 Bibb, 223; 7 Cranch, 218; 10 Leigh, 251.

Whilst we are clear upon this point, there yet remains another to which great weight was deservedly attached by the Court below. Handcock sold the girl Harriet to Brown in the year 1850, in the presence of Hollingsworth, who made no objection to the sale, and at the request of Brown and the witness, Joseph Howell, who drew the bill of sale on that occasion, stated her age.

We have no difficulty in concluding that this conduct on the part of Hollingsworth, after some five years possession on the part of Handcock, presents serious difficulty in the way of his recovery. It was objected that this should have been specially pleaded as matter of estoppel in the manner prescribed in the 31st rule of Chancery practice. But this ground of defence is fully stated and relied upon in the answer of Brown; and our statute (Thomp. Dig., 458, sec. 9,) expressly provides that the defendant may, in all cases, instead of filing a formal plea or demurrer, insist on any special matter in his answer, and have the same benefit thereof as if he had pleaded the same matter, or had demurred to the bill. The rule referred to, which we have adopted from the practice of the United States Circuit Courts, prescribes nothing in regard to what matters of defence shall or shall not be specially pleaded, and is confined solely to the *manner* in which a plea or demurrer shall be filed. Brown, therefore, is entitled by the statute to the full benefit of the defence set up in his answer. This defence is well sustained by the testimony of Joseph Howell, and the principle of law involved has been well considered and settled by this Court in the case of John G. Camp vs. W. D. Moseley, et al., 2 Fla. Rep. p. 197. This case. together

with the authorities there cited, as well as others to which we have been referred, fully sustain the principle that "a party who negligently and culpably stands by and allows another to contract, on the faith of an understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has assisted in deceiving," as laid down by Lord Denman in Gregg vs. Wells, 10 Ad. & Ellis, 90. Many cases to the same effect are collected in Robertson's Practice, 2 vol. p. 30, 31 and 255; and in 2 U. S. Eq. Dig. p. 429 and 430; see also 2 Starkie on Ev. p. 26.

The decree will therefore be affirmed with costs.