T. S. COOGLER ET AL., APPELLANTS, VS. CHARLES P. ROGERS, APPELLEE.

1. A deed conveying lands which are at the time of its execution held adversely by a person not a party to the deed is void as to such person, but not as between the parties to the deed.

2. Where a conveyance is made of lands which at the time are in the adverse possession of one not a party to the deed, ejectment will not lie in the name of the grantee to such deed, but only in the name of the grantor.

3. If the grantee in a deed conveying land held adversely by another institute an action of ejectment in the name of the grantor, against the person holding adversely, the action will not be dismissed at the instance of the defendant on the ground that it was brought without the knowledge or consent of the grantor, or that he neither has nor claims any interest in the land.

4. The act of March 6th, 1845, providing that if a married woman die in this State without children surviving her, the husband shall be entitled to administration and to all her property, both real and personal, applies as well where the wife is under twenty-one years of age, as where she has attained that age, and where a wife

under twenty-one years of age dies, this act, and not the statute of November 17th, 1829, section 2, p. 469, McClellan's Digest, controls the descent of her property.

5. If lands are held adversely, and another person who is estopped to claim them as against the one in adverse possession convey them to a third person, the estoppel will extend to the last named person and those claiming under him.

6. Possession under an executory contract of purchase is adverse except as to the party contracting to convey, and under whom the possession is held.

7. The possession of successive occupants between whom there is privity may be united to make up the period of adverse possession necessary to constitute a defence against an action of ejectment founded on the true title.

8. The possession of one cotenant is *prima facie* that of the other, and there must be something amounting, in law, to an ouster before ejectment will lie or the statute of limitations begin to run between them.

9. The statute of limitations will begin to run in favor of a cotenant in possession against the cotenant out of possession from the time that there is an ouster of the latter by the former.

10. Where the testimony clearly shows an estoppel of the plaintiff, and an averse possession for the period of seven years under the statute of limitations as against the true title upon which the plaintiff claims, the verdict will be set aside as contrary to the evidence.

Appeal from the Circuit Court for Hernando county.

The facts of the case are stated in the opinion of the court.

*Angus Paterson* for Appellants.

*Wall & Wall, Shackleford & Palmer* for Appellee.

Nine grounds of error are alleged in the assignment of errors, and in the order the same are set forth we will discuss them.

1st. The first error alleged is the refusal of the court to dismiss said cause upon motion.

We contend that no proof was offered or produced to the court in support of said motion.

The alleged statement in writing of Rogers was not produced, but merely a certified copy of the same. Even if the original had been filed along with the motion, it would not have been sufficient in that there was no proof offered either by affidavit or otherwise that the signature purporting to be that of Charles P. Rogers was his signature in fact, and it was impossible for counsel for plaintiff to say, as the original was not produced. The certificate of the Clerk of Suwannee county was not an official act, as he is only authorized by law to take acknowledgments in those cases where the law requires the same to be taken. And it must not be forgotten that an instrument of that character is not of such nature to authorize its record, and therefore a certified copy of the record of the same, even if the original had been accounted for, is not and cannot take the place of the original. We take the practice to be that when any motion is made, depending upon facts dehors the record, it should be supported by affidavit or other proof under oath. In addition to the above we call the court's attention to the affidavit of J. B. Wall, filed by plaintiff's counsel in rebuttal of the motion made by defendants.

In case the defendants believed that the suit was instituted without the authority and consent of Rogers, the plaintiff, the defendants could have called upon the counsel for plaintiff to show his authority, provided the court saw that there was reasonable ground for such belief. Hamilton vs. Livingston, 37 N. Y., 502. Either the above method could have been adopted, else the defendants could have ruled and should have ruled the plaintiff and his counsel

to show cause why said suit should not be stricken from the docket. Thatcher vs. D'Aquilar, 11 Excheq., 436, and Weeks on Attorneys, Sec. 79, both cited in 1 Eng. & Am. Ency. of Law, 945.

A grantee obtaining his conveyance while the land is out of possession of his grantor and is possessed by one claiming the same adversely, is given the right by law to bring an ejectment suit in the name of his grantor; nor can his grantor defeat the action by subsequent act or deed. 22 Fla., 374; McMahan vs. Bowe, 114 Mass., 145, and cases cited.

If the grantee had not the authority above claimed, and the grantor desired the defendants to have and enjoy the land as their own, he should have executed a conveyance of any interest he might have in a way authorized by law for the conveyance of real estate.

The plea of not guilty put in issue the very point raised by the motion. McClellan's Digest, Sec. 2, p. 481.

A nominal plaintiff has no authority or control over the suit and the affidavit of J. B. Wall set forth that Rogers was only the nominal plaintiff. Kendig vs. Giles, 9 Fla., 278; Livingston vs. Prosens, 2 Hill, 526.

2d. The second error alleged is the refusal of the court to permit the filing of the additional pleas, pleas *puis darrain* continuance. In this we contend that no error was committed in refusing permission to file the first additional plea, as in the case of Parkhill vs. Union Bank, 1 Fla., 110, the Supreme Court decides that contradictory pleas cannot be filed. In the plea of not guilty the defendants deny any interest at all in plaintiff, while in the first additional plea they set up an instrument from the plaintiff renouncing any interest in the land. See Sanford vs. Cloud, 17 Fla., 532, as to contradictory pleas.

In regard to this alleged error, we also refer the court to

Nelson vs. Brush, 22 Fla., 374 ; Waite vs. Lindsay, 6 Met., 407 ; Farnum vs. Peterson, 111 Mass., 151 ; also McMahan vs. Bowe, 114 Mass., 145, above cited, the above authorities being shown that a grantor will not be permitted to prevent the use of his name by the grantee in case a third party holds adversely at the time of the conveyance.

Nor does said plea allege that the matters therein stated occurred after the last pleadings as the law requires.  McClellan's Digest, Sec. 46, page 823.

Application to file said pleas were made in open court, and we take it that after issue joined and the case being called for trial, the court may in sound discretion refuse to allow pleadings to be filed which stated no fact of substantial defence, and would only delay the trial of the cause. As to the second plea, it also failed to state any fact or facts which would be a substantial defence ; then, too, it was of such nature as to embarrass the issue and thereby mislead the minds of the jury.  Smith's name did not in any place appear in the pleadings, and the issue attempted to be raised by such plea would in nowise have determined the truth or the untruthfulness of the allegations in the declaration.  The defendant, also, in an ejectment suit after the disseizen is not permitted to set up that the nominal plaintiff since such disseizen has conveyed his interest in the land to some one else. Tyler on Ejectment, 938-939 ; Brinley vs. Whiting, 5 Pick., 348 ; Wolcott vs. Knight, 6 Mass., 418.

Admitting for merely argument's sake, that Smith's was the party in interest, and that his interest was sold under execution and a deed given therefor to Marshall, would not Marshall have the right to continue said suit for the benefit of himself in the name of Rogers ?  He could not commence suit in his own name according to Nelson vs. Brush.

When a party buys an interest in a suit which is in liti-

gation and buys it from the plaintiff or those in privity of title with him, he has the right to continue the suit in the name of the plaintiff appearing of record at that time, or if the law would permit him to recover he could have the cause amended as to make himself the plaintiff of record. 3 Waits Ac's & Def's, 46 ; 48 Barbour, 61.

Let's say for sake of argument that the court should have permitted the filing of the pleas and then let them come up on motion. For the reason that neither one set up any defence which could have held good on motion, they would have been stricken, and the rule of law is well settled that when no error has been committed which substantially affects the rights of the defendant, a judgment for the plaintiff must be affirmed. Walter vs. Florida Savings Bank, 20 Fla., 826; Gibbs et al. vs. Drew, 16 Fla., 147 ; Randall vs. Paramore, 1 Fla., 409 ; Daggett vs. Willey, 6 Fla., 515.

The second additional plea was also fatally defective in that it was based upon the fact that Rogers was merely the nominal plaintiff, Smith being the party for whose benefit the suit was instituted. Taking that view of it, Smith's interest was equitable in its nature ; and so far as the defendants are concerned they are prevented by law from in any way setting up that Smith had any interest whatever. The rule is that where there is an actual possession by a third party under a claim of title, and a conveyance is given by the real owner to another person, the title to the land is not affected by the transaction, Barry vs. Adams, 3 Allen, 493 ; Shorthall vs. Binkley, 31 Ill., 219.

If the above be the correct rule, how can the defendants claiming adversely to Rogers set up that Smith had any interest in the land which could be sold, for by so doing they are setting up the conveyance from Rogers to Smith,

which is absolutely void so far as they are concerned. The rule is that a defendant holding adversely cannot set up a conveyance from the grantor to any one else.

3d. The court did not err in overruling question propounded to Barnes. The way in which the question was put made it leading. It tended to bring out a state of facts wholly irrelevant; adverse possession cannot be proven by the fact that the plaintiff never said anything to a certain party in regard to his claim on the land.

Then, too, the question was propounded in another way, and the desired facts came out, and even a court err, if he afterwards corrects his error so as not to have prejudiced defendant's rights, the error will not be considered. Morrison vs. McKinnon, 12 Fla., 562.

4th. The court did not err in refusing to admit in evidence the deed from Sheriff Johnston to George T. Marshal to the land in controversy.

As before argued to the court, the defendants would not be permitted to show that the nominal plaintiff had, while said land was held adversely by the defendants, disposed of his interest in the land to some third person, and thereby defeat the plaintiff's action. As decided by the court in Nelson vs. Brush, 22 Fla., 374, such a deed is absolutely void as to the parties in adverse possession, and good only as between the parties and third parties. Brinley vs. Whiting, 5 Pick., 348, and other cited in connection with this point when discussed in regard to the second error alleged.

In addition to the above, such deed is not only absolutely void as to the defendants, but every conveyance which takes its source of title from the plaintiff in this suit.

We also call the attention of the court the fact that by wishing to show that Smith had any interest in the land, it would in effect have allowed the defendants to show that

Rogers' deed to Smith was a valid conveyance, which, as decided by Nelson vs. Brush, and Brinley vs. Whiting, they could not do.

We also make the point that as said deed was void as to the defendants in possession, the nominal plaintiff was by law constituted a trustee for Smith, and Smith's interest being of an equitable nature, it could not be sold under a common law exception. See Hermon on Executions, 1878 ed., sec. 142 ; Hammond vs. Gordon, 93 Mo., 223 ; Robinson *et al.* vs. The Springfield Co., 21 Fla., 235.

The issue which was raised upon the plea of the general issue only permitted matters of defence to put in evidence which existed at the time of the institution of the suit.

5th. The court did not err in charging the jury that if Annie Rogers received land by descent from her father, and died without issue, the land descended to her husband, whether she was of age or not. We refer the court to the statute of this State making the husband the heir of his wife in case the wife die in this State without issue. McClellan's Digest, sec. 12, page 471. The defendants contend that under sec. 2, page 469, of McClellan's Digest, an infant's property, whether married or not, descends to the kindred of her paternal ancestor, in case she die without living issue. This latter statute was approved in 1829, while the former statute, making the husband heir, was approved in 1845.

That the husband is the heir of the wife, when there are no living children at the time of her death, see McGee *et al.* vs. Doe ex deen Alba, 9 Fla., 382. In addition to the above we desire to call attention to the phraseology of the statute ; under section 6, page 469, of the Digest, descent from an infant to its paternal ancestry's line, depends upon the failure of issue; now under the statute of 1845, the husband of a deceased wife is placed on all fours with the liv-

ing children with his wife as regards the devolution of her property. Therefore the statute must have referred to married women infants as well as adults. See Dwarris on Statutes, 556; Vattel, bk. 2, ch. 17, sec. 2, 285, both cited in Jones *et al.* vs. Dexter, 8 Fla., 285, in addition to the above, the act of 1845 was an act amendatory to the act of 1829, and in Harrell vs. Harrell, 8 Fla., 46, the court decides that the original act and the amendment is to be viewed as one act.

6th. The court did not err in not giving to the jury charges two, six and seven, offered by the defendants. Charge two is as follows: " If you believe from the evidence that Rogers, the plaintiff, in the year 1878 refused to take any steps to protect the land in controversy, when the title in John L. May's estate was attacked, but left the matter to Barnes, and that Barnes took possession in his own name and protected the land, that act constituted adverse possession, and if such possession has continued by Barnes and his grantee without paying any rents or any acknowledgments for seven years, the plaintiff cannot recover, and the jury will find for the defendant."

In the above charge there is clearly no error. The law is that even if a cotenant buys in an outstanding title or encumbrance, or buys a tax title, the cotenant can at any time come in and take the benefit of the same. 1 Wash. R. P., sec. 12, 648.

As to the possession of Barnes, the evidence shows that he had no interest in said land at the time he entered into possession of the same, but that his wife was the owner of an undivided half interest, and that she went into the possession of the same with him, and the evidence does not show that Barnes' wife while in possession ever claimed the whole of said estate. Her possession was the possession also of her cotenant, and Barnes therefore could not claim

said land against his wife, who was in possession ; nor could he claim adversely to Rogers, as his wife's possession was also that of Rogers, being co-tenants.   1 Washburn R. P., page 645, and cases cited.

In addition to the above, the latter part of the charge does not give a proper definition of adverse possession, especially as against a co-tenant.   Upon the facts as stated in the charge, it does not show that such possession was an actual ouster, nor does it show that said possession was open, &c.   Freeman on Co-tenancy and partition, 1st ed., sec. 166, 221.   As to what constitutes adverse possession between co-tennants.   1 Eng. & Am. Ency. of Law, pages 232 and 233.   And the evidence to sustain an ouster of a co-tenant must be stronger than to sustain ordinary adverse possession.   Barrett vs. Coburn, 3 Metc., (Ky.) 513 ; Forward vs. Deetz, 32 Pa. St., 72 ; Bailey vs. Framwell, 27 Tex., 328 ; Keil vs. West, et al., 21 Fla., 508, Tyler on Ejectment, and Adverse Possession, 199 ; Thompson vs. Felton, 54 California.

As to charge six offered by defendant and refused by the court, and fully set forth in the record, we do not consider any error was committed.

This charge is similar to the one just discussed.

In the first place the evidence does not establish as a fact that Rogers said either to Barnes or his attorney that he claimed no interest in the land.   The defendant, Coogler, says so only, but we don't believe that the court will credit his testimony after they have carefully examined the evidence.

Even though a co-tenant should say he had no interest in the land when suit was brought against it, and did not contribute to the expense of defence, the facts as stated in the charge do not show that Barnes held the same ad-

versely, nor does the facts as therein stated show that Rogers did anything to work an estoppel in pais.

See as to adverse possession McCragen vs. city of Frisco, 15 Cal., 561 ; 12 Fla., 18 ; Sarah A. Townsend vs. Lot W. Edwards, decided at this term.

As to the estoppel see Bigelow on Estoppel, page 552, and cases cited.

As to charge seven, also offered by defendants and refused by the court, and to be fully found in the record, we see no error.

In the first place, the facts as stated in the charge do not show that there was an actual ouster or any act tantamount thereto, and actual ouster or some act equivalent thereto is absolutely necessary before one co-tenant can begin to hold adversely against another.

See authorities cited by us on charge two.

The court did not err in refusing to give charge eight asked by defendants or in saying that the " evidence was not applicable." The charge is fully stated in the record and the court was perfectly correct in saying that there was no evidence in such case applicable to such charge. The evidence does not establish nor is there any evidence in the record to the effect that Rogers stood by and suffered the land to be sold. This the court will see upon reading the evidence in the case, and the law is that it is error for the court to submit to the jury a fact or a state of facts which there is no evidence tending to prove, unless it stands admitted by the pleadings or otherwise. 2 Thompson on Trials, Sec. 2315, and cases there cited. Same principle in Whitner vs. Hamlin, 12 Fla., 18 ; Dibble vs. Fruluck, 11 Fla., 135.

The court did not err in refusing to give charges nine and twelve asked for by defendants.

Charge nine is fully set forth in the record. True it is

that by construction of law Rogers was in possession of the land in controversy because his co-tenant, Barnes' wife, was in possession, but it was merely a constructive possession, and the charge contained a statement of facts which would mislead the jury to believe that there was an actual possession of the land by Rogers, and as to that fact there was no evidence tending even to prove it. The charge is also vague and uncertain, and such charges are always properly refused. 2 Thompson on Trials, sec. 2, 315.

In addition to the above the evidence shows that Barnes went into the possession under the deed to John L. May, and that Barnes' wife, Matilda L. May, was one of the heirs of John L. May. Barnes says he went into possession under that deed and claimed possession under that deed, therefore he was claiming possession for his wife, how then could Barnes himself ever derive any title to the land by adverse possession? Now the charge so prepared would have the court instruct the jury if a certain state of facts existed, then the title became adverse in Barnes and his wife.

Further, the charge would have the court to instruct the jury in effect that if at any time before the institution of the suit Barnes and his wife went into possession of the land, and the title became adverse in them, that they should find for the defendants, thereby entirely ignoring the statutory period of limitation; also ignoring other elements of adverse possession, such as notoriety, the claim of the whole tract and against all persons. For the elements constituting adverse possession, McClellan's Digest, secs. 8 and 7, page 732 ; also decisions cited above in connection with what constitutes adverse possession by Rogers, saying (which we do not admit) that he had no interest in the land, it was merely a verbal disclaimer, and unless by his act in so saying Barnes' wife was justified in making im-

provements and therefore estop Barnes, his verbal disclaimer did not in any way affect his title. As to estoppel in pais, see again Bigelow on Estoppel, p. 552.

Then, too, so long as Barnes' wife remained in possession her possession was also the possession of Rogers, and even though Rogers should say that he had no interest in land (which is testified to by no one but defendant Coogler) unless Barnes' wife or Barnes acting for her, were justifiably mislead on the principle of estoppel, it was necessary for Barnes and his wife to commit some notorious act adverse to Rogers' interest, before adverse possession would begin to run. And such notorious act was never committed until in February, A. D. 1882, when Rogers gave a deed to Coogler. See Jackson vs. Thomas, 16 Johns. Re., 292 ; Jackson vs. Frost, 5 Cowen, 346 ; Tyler on Ejectment and Adverse Possession, 876.

Said charge twelve is as follows : " The deed to John L. May is sufficient color of title for Barnes and his wife to establish adverse possession under. If the above facts are established, then the verdict should be for the jury."

This charge is vague, indefinite and uncertain ; what fact does it refer to ? If it refers to any facts at all it must certainly refer to the facts stated in the other instructions asked for, and in that case if any of the above charges were properly refused, all the facts referred to not being before the jury, it was proper on that ground alone to refuse it. See again Thompson on Trials, section above referred to.

We also contend that the charge is improper in that if the title of John L. May was attacked, his heirs and their privities could claim under as a color of title, but how can Barnes and his wife claim under the very deed, how can Barnes' grantee claim under the very deed, which is the source of Rogers' title, and have that deed construed into color of title to support adverse possession against Rogers?

And we further contend that even admitting for the sake of argument that Rogers and his wife did hold and occupy a certain portion of said land adversely to Rogers for the statutory period of seven years, there was no color of title as above argued either in Rogers and his wife or their privities until February, 1882, less than seven years before the institution of this suit, and the defendants could only claim that portion which was actually occupid by them, the amount and location of which they should have proved in order to retain the same, and that as will appear from the evidence they failed to prove.

We also summit to the court as a question of law that if Barnes and his wife, his wife being the heir of John L. May, went into possession of the land in controversy under a deed to John L. May, claiming that their title was under that deed and depended upon it, could they during the time they held under said deed hold adversely against Rogers, who was the heir at law of Annie May, another daughter of John L. May?

We also submit to the court that if the defendants, Coogler and Higgins, went into possession of the land in controversy, claiming under a chain of title, one link of which was this deed to John L. May, and at the trial introduced in evidence a deed from Barnes to the land in controversy, Barnes being the heir at law of Matilda H. May, a daughter of John L. May, could they in attempting to prove adverse possession use the deed to John L. May as a circumstance of adverse possession?

The court did not err in refusing to grant a new trial because the verdict was contrary to the law and the evidence, which will be seen upon an examination of the record.

The opinion of the court was delivered by the Honorable John F. White, Judge of the Third Judicial Circuit, who sat in the place of Mr. Justice Mitchell, disqualified.

Plaintiff below recovered a judgment for the lands in dispute, from which defendants appealed. Appellants assign nine errors in the trial of the case below, and insist and rely for a reversal on those several grounds. We propose to notice only such of these as in our opinion are decisive of the case.

The first error assigned is, that the court erred in refusing to dismiss said cause on his motion, because brought in the name of Rogers, the nominal plaintiff, by Smith, the real plaintiff, without the knowledge of Rogers.

Was the action properly brought in the name of C. P. Rogers? The record does not show that suit was commenced in the name of Rogers against his consent, or that he at any time interposed objections to its being so entered or continued in his name. He only disclaims any interest in the land, or knowledge of the action on the trial of the case. It is well settled that a deed made to land by a person out of possession, when the lands are held adversely by another, though good as between the grantee and grantor, and as to all other persons, except as to the party in adverse possession. Yet as to him, and to those that afterwards come in under him, it is entirely void, and as a conveyance a mere nullity, and cannot be read in evidence against him. In such case the attempt to convey, at least as between the grantor, grantee and the person in possession, fails to accomplish its purpose or object.

In such case, in contemplation of law, as between the grantor, grantee and the person in adverse possession, the title remains in the grantor or original proprietor, and he

may sue to recover the land, but the deed to lands thus held in adverse possession, being good as against the grantor, his heirs and strangers, and void as to the party in possession, an action will lie against him in the name of the grantor notwithstanding such deed, but not in the name of the grantee. And such recovery when had by the grantor will enure to the benefit of the grantee. Hamilton vs. Wright, 37 N. Y., 502; Wade vs. Lindsey, 6 Metcalf, 413, 414; Betsey vs. Torrance, 34 Miss., 138; Wilson vs. Nance, 11 Humph., 191; Edwards vs. Parkhurst, 21 Vt., 472.

So it has been held in Pennsylvania that ejectment will lie and be maintained in the name of the warrantor, although he might have no beneficial interest in the land and might not have known of the action. Cambell vs. Galbreath, 1 Watts, 70.

As before remarked, Rogers does not seem to have interposed objection or opposition to the use of his name as nominal plaintiff; and if he conveyed or attempted to convey to Smith and received a valuable consideration therefor, inasmuch as the action could have been maintained successfully in his name, he would be estopped to refuse the use of his name in an action to promote and secure the ends of justice, in the event he attempted so to do. Entertaining these views, we see no error in the action of the court below in overruling appellants' motion, and this disposes of several of the other errors assigned by the appellants, especially the second, fourth and others of like character.

It being evident that the action must stand or fall upon the strength of the title of Rogers alone, and his recovery, if recovery be had, inuring to the benefit of Smith, the real plaintiff, it follows that if the recovery cannot be had upon the strength of the title of Rogers, then the action cannot be maintained, nor a recovery laid upon the title of both combined.

The fifth error assigned by appellants is, the court below erred in charging the jury " that if Annie Rogers received land from her father, John L. May, and died without issue, the land descended to her husband whether she was of age or not."

It is earnestly contended by counsel for appellants, that inasmuch as Annie Rogers died without issue, and before she arrived at the age of twenty-one years, that such real estate descended to the paternal kindred, or to the kindred of her father, John L. May, deceased, under our statute of descent of 1829, McClellan's Digest, 469, sec 2. While we consider the statute of 1829 as the law governing the descent of real and personal property of unmarried minors, where the same is derived from the father or mother, without expressing an opinion as to the statute of 1829 on estates of married persons who died without issue, and who were minors at the time of their death, prior to the act of March 6, 1845, we think it was the intention of the Legislature in passing the twelfth section of that act (McClellan's Digest, 471,) to make a distinction between the descent of property of deceased unmarried minors, and that of deceased married minors, without regard to the source from which the latter class derived such property, and we are persuaded that the descent of property owned by married persons who die under the age of twenty-one, is governed and controlled by the act of 1845, directing the disposition and descent of property of married persons dying intestate, whether with or without issue born, and that it is not now controlled by the act of 1829.

The Legislature of 1845 no doubt wisely intended in passing said act to more clearly define and fix the rights of a surviving husband or wife on the death of the other, as to the property owned by either when dying intestate. It was reasonable and right, just and proper, that the old law of

1829 should be made more intelligible and just, and conform more to the liberality of our age and institutions. The rights of the surviving husband, and his interest in the estate of his deceased wife, as tenant by the courtesy secured to him by section 2, Acts of 1829, in estates there referred to, were hedged in by the embarrassing subtleties growing out of the doctrine of tenancy by the courtesy at common law. These intricacies and subtleties were a fruitful source of litigation, for to create a tenancy by the courtesy at common law four things had to occur and combine: 1st, marriage ; 2d, actual seisin of the land by the wife during coverture ; 3d, issue born alive of her which might inherit the same estate as heir of the wife ; and 4th, the death of the wife. This often worked a great hardship to the surviving husband, who, though he might have lived with his wife from early youth to hoary age, and though there was actual seisin of the wife for the whole period of coverture, and though he might have expended his energies in improving and embellishing the estate of the wife, yet if there were no issue born of the wife capable of inheriting the estate as heir of the wife, on her death the surviving husband was left without any estate whatever in her property and was liable to be ousted from his home in his old age, as he took nothing as tenant by the courtesy. This unjust and inequitable appendage of the common law being contrary to our institutions, and to the liberality of the age in which we live, no doubt led to the passage of the act of 1845, the provisions of which are more in accord and harmony with modern notions of right, and justice, and which clearly and squarely and without any contingency declares and defines the estate of the surviving husband dying intestate, with or without issue born, dead or alive.

It is insisted by counsel for the appellants that the act of 1845 can only be construed to refer to, and be applicable to,

"adult married women," and to their property; that a "female cannot be considered a woman in law until she is twenty-one years of age." To this it may be replied that while it is true she is disqualified by minority from making certain contracts, such as the making of deeds of conveyance, and relinquishment of dower, yet this disability does not attach to the contract of marriage nor its incidents, for, as to this contract at common law, she could assent to it at the age of twelve years; and for the purpose of marriage, including and involving all the rights and responsibilities consequent upon the consummation of this contract, she is considered in law a " woman," though she may not have arrived at the age of twenty-one years. " Marriage," in a legal sense, is defined to be a contract, made in due form of law, by a man and woman reciprocally engaging to live with each other during their joint lives, and to discharge towards each other the duties imposed by law on the relation of husband and wife, and all persons are able to contract marriage, unless they are under the legal age, or other disabilities. 2 Bouvier's Law Dictionary, Title "Marriage."

By the provision of the twelfth section, Act of March 6, 1845, it is provided, "If married women die in this State possessed of real and personal property, or of either species of property, the husband shall take the same interest in her said property, and no other, which a child would take and inherit, and if the wife should die without children then the surviving husband shall be entitled to administration and to all her property, both real and personal." See McClellan's Digest, Sec. 12, 471. The language of the statute is so plain, giving to the husband the same interest, and no other than therein provided for, that we are constrained to believe that it repeals the act of 1829 as to the estates of married minors, if said act was ever intended to apply and control the descent of married minors' estates, and the court below committed

no error in giving the charge as claimed by appellants in the fifth error assigned.

It is further insisted by the appellants that the appellee, Rogers, (plaintiff below) was estopped from setting up a claim to the land in the controversy against Coogler and Higgins, the appellants. From what has already been said, we do not deem it important to inquire what effect the estoppel of Rogers, the nominal plaintiff, would have and work upon the right of Smith, the real plaintiff; but inasmuch as there will have to be another trial had in this cause from what follows hereafter, we deem it proper to dispose of any disputed point that may arise on this question hereafter. We inquire, does the estoppel of the nominal plaintiff in ejectment reach to and substantially affect the real plaintiff, and whether or not he is also estopped from maintaining an action for the recovery of the land conveyed to him by the nominal plaintiff, where the nominal plaintiff is estopped from bringing such action?

From the fact already stated—that the deed from Rogers to Smith was void as to Coogler, because executed by Rogers out of possession, and while Coogler was holding the land adversely, and because as between Rogers, Smith and Coogler, in a contest over the lands in dispute, the law deems the title, if any exists, to be in Rogers, whose recovery will inure to the benefit of Smith—we are of the opinion that if the doctrine of estoppel applies to Rogers in this case, then Smith is likewise estopped to claim the lands or maintain an action against Coogler or those holding lawfully under him. It has been repeatedly affirmed and decided that one claiming title under a party who himself is estopped, to deny the title of another is likewise estopped, and bound by such estoppel to deny the title of such other person. Phelps vs. Blount, 2 Dev., (N. C.) 177; 3 Washburn on Real Property,

94.; Scott vs. Douglass, 7 Ohio, 227 ; Carver vs. Jackson, 4 Peters, 85.

Estoppel is defined to be "the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part, or on the part of those under whom he claims." Bouvier's Law Dict., Title "Estoppel."

But was Rogers estopped from bringing an action against Coogler, either in his own right or for another, for the lands in controversy ? Stephen, in his Pleading, defines estoppel to be " a preclusion in law which prevents a man alleging or denying a fact in consequence of his own previous act, allegation, or denial of a contrary tenor." Stephen's Pleading, 239. And it has been repeatedly decided that the princi-- pal of estoppel is applicable to all cases where one by word, act or conduct wilfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injudiciously to himself, or to alter his own previous condition to his injury. 16 Wend., (N. Y.) 31; 28 Maine, 525; 11 Wend., (N. Y.) 117 ; 9 New York, 121; 1 Dev. & Battle, 464 ; 12 Vt., 44; Keyser, Judah & Co. vs. Simmons, 16 Fla,, 263; Camp vs. Moseley, 2 Fla., 171; Hollingsworth vs. Handcock, 7 Fla., 338 ; Levy vs. Cox, 22 Fla., 552.

This court in an early day and in a well considered case, used the following language : "The technicalities incident to an estoppel, especially *in pais*, are gradually giving way to considerations of reason and practical utility ; and the courts of the present day seem disposed to give force and efficiency to a doctrine which is based upon principles of justice and the purest morality." Camp. vs. Moseley, 2 Fla., 197, text. From cases cited above, and numerous others adjudicated, the law of estoppel may be briefly laid down as follows: 1. Words and admissions, or conduct, acts and acquiescence, or all combined, causing another person to believe in the existence of a certain state of things. 2. In

which the person so speaking, admitting, acting and acquiescing, did so wilfully, culpably or negligently. 3. By which such other person is or may be induced to act so as to change his own previous position injuriously. Referring to the evidence as shown by the record in this cause. 1. As to the prior conduct of Rogers in regard to the lands in controversy, it is clear that he never actually entered into the possession of any part of the lands personally, or by tenant: and there is no evidence that he ever attempted to do so, or that he ever claimed to own an interest in the same; while it is evident that Barnes and wife, Coogler's grantors, did enter and claim to be the owners of the land. 2. When the title is assailed by creditors of Matilda H. May, Rogers refused to join in the defense, or to contribute anything to protect the title, and refused to allow his name to be connected therewith. He could not have been ignorant of those suits carried on in the name of Barnes and wife alone, nor of his interest therein, if he claimed or had any, for he had actual knowledge of the same brought home to him by Barnes and by Coogler. His acquiescence therein, and his acts and acquiescence in and before said suit, or circumstances to be considered in connection with his subsequent declaration to Barnes that he had no interest in the litigation, which was certainly tantamount to saying that he had no interest in the land, and, to Coogler, when he declared, as Coogler testifies, that he claimed no interest in the lands. "The acts and admissions of a party operate in the nature of an estoppel, when in good conscience and honest dealing, he ought not to be permitted to gainsay them." Welland Canal Co. vs. Hathaway, 8 Wendell, 483, cited and approved in 2 Fla., 197, text. "Admissions arising from demeanor and conduct are conclusive against the party when he has received a benefit therefrom, or prejudiced another thereby." 2 Saunders' Pleading and Evidence, 1. Mr. Starkey, in his valuable work on evidence,

says, as to admissions: "In general, admissions may be presumed not only from the declarations of the party, but even from his acquiescence or silence, as for instance, when the existence of a debt or a particular right has been asserted in the presence of a party, and he has not contradicted it, such acquiescence and silence will amount *prima facie* to an admission of a debt or right. So an acquiescence and endurance, where acts are done by another, which if wrongfully done, are encroachments and call for resistance and opposition, are evidence of a tacit admission that such acts could not be legally resisted." 2 Starkey's Evidence, 37, cited and approved in 2 Fla., 198, text. The evidence shows that Rogers said to Barnes, when told of the prospective or pending litigation, and when told by Barnes that if he, Rogers, made any claim to the land, that they would have to fight for it; "well, he didn't intend to have anything to do with it; if I wanted it I would have to fight for it." Coogler swears; In January, 1879, lands were levied on under an execution against Matilda H. May. I was employed by Barnes to enjoin the sale. I endeavored to get Rogers to unite in the suit if he claimed any interest in the land. Rogers refused either to let me use his name, or contribute to the prosecution of the suit, stating to me the fact that he claimed no interest in the land. I therefore filed a bill in the names of John D. Barnes and wife against Mayo, administrator of Edrington. The positive denial of any interest in the lands to Coogler, his utter refusal to aid in the suits to protect the title, coupled with his assertion that he had no interest in the litigation concerning them, his refusal to allow his name to be connected with said suit in any way, are all circumstances to be considered in determining this question.

We ask, was the conduct and declaration of Rogers "wilful, negligent or culpable?" If the denial of interest in the

land to Coogler, and denial of interest in the litigation concerning the lands to Barnes were made by Rogers, with a knowledge of his right in the lands, as the husband of the deceased wife, and we believe that it was, then it was wilful ; and if not made with such knowledge, then his utterances and conduct showed culpable negligence.

Were those utterances, acts and admissions, coupled with the conduct of Rogers throughout, calculated to induce Coogler to believe that if he purchased the lands from Barnes and wife, that as to Rogers, he would get a good title, and peaceable possession of the same ? Taking the statements as proven, in connection with the surrounding circumstances, we think that Coogler was justified in believing, and did believe when he bought the lands from Barnes and wife, that he would have no litigation with Rogers, directly or indirectly, in regard to the same, and could not have expected that Rogers could be capable of assailing his title, directly or indirectly. The very fact that Rogers attempts to convey the land without warrantee, except against himself, is a potent circumstance going to show his want of confidence in his title to said lands; and after his denial of interest in the lands, after his tacit admission that the lands belonged alone to Barnes and wife, after throwing upon them the extire expense, and loss of time incident to protracted litigation, in protecting and enforcing their sole claim to it, in morals and in conscience, as well as in law, Rogers is estopped to claim the same, and cannot maintain an action to recover it, either for himself or another. "The law imposes silence on him, and prevents his setting up a claim against a purchaser who had been influenced by his conduct," or against those holding under him. Levy vs. Cox, 22 Fla., 552; Camp vs. Moseley, 2 Fla., 197, text; Hollingsworth vs. Handcock, 7 Fla., 338 ; Welland Canal Co. vs.

Hathaway, 8 Wend., 483; 16 Wend., 531; 9 N. Y., 121; 1 Dev. & Battle, 464.

Entertaining the above views, we are of opinion that the verdict as rendered in the court below, should not be allowed to stand, and that the judgment rendered thereon should be reversed.

It is further insisted by the appellants that the proofs showed in court below, that they had held the land adversely to the appellee for more than seven years before the commencement of this suit by the plaintiff; and that the action was barred by the statute of limitations, and that it was error to refuse a new trial, as the verdict of the jury was contrary to the evidence and the law.

This brings up for consideration the very difficult question of what constitutes adverse possession under the statutes of our State. For obvious reasons growing out of the shortness of limit of our statute, being only seven years, our sparse population, and extensive domain, we think the doctrine of adverse possession is to be taken strictly, and should not be allowed to be made out by inferences, but by clear and positive proof. Every presumption should be in favor of possession in subordination to the title of the true owner, for, to allow a different construction, (says Chief Justice Marshall,) "would be to make the statute of limitations a statute for the encouragement of fraud—a statute to enable one man to steal the title of another by professing to hold under it." Kirk vs. Smith, 9 Wheat., 241.

The possession to be adverse must be: 1, hostile to the true title; 2, it must be open; 3, it must be continuous; 4, it must be notorious; so as to prevent all doubt as to the character of the holding, or want of knowledge on the part of the owner. Hart vs. Bostwick, 14 Fla., 178–9, text.

Measured by these rules, was the possession of the appellants adverse? It has been decided that where one enters

upon land under a deed duly acknowledged and recorded, he acquires a freehold either by right or wrong; if by wrong, it is an actual disseisin of all claiming the land under a different title. Higbee vs. Rice, 5 Mass., 344; Little vs. Megquier, 2 Greenleaf, 176. When a party enters upon land upon the strength of a deed from another person than the owner, it seems that the possession from the time of such entry is adverse ; and if continued for the statutory period, it will bar his entry. Hart vs. Bostwick, 14 Fla., 179, text; citing Jackson vs. Camp., 1 Cow., 605; Woods vs. Dille, 11 Ohio, 455. The records show that Barnes and wife conveyed lands the to Coogler on the 10th day of February, 1882 ; that the deed was duly recorded, and that he went into possession openly; and cultivated part of the land, and made improvements thereon. And the evidence of Barnes, and of Coogler, show that Coogler contracted for and bought the lands in dispute from Barnes and wife in March, 1880, paying part of the price down and taking from Barnes a bond for title, which bond was destroyed when the balance of the price of the land was paid, and when the deed of Barnes and wife was executed on the 10th day of February, 1882. Coogler and Barnes both swear that up to the purchase and execution of the bond for title, that Coogler acted as agent for Barnes after Barnes moved to Texas. And Coogler swears most positively that from the date of the purchase and delivery to him of the bond for title in March, 1880, he has been in actual adverse possession of the premises in his own right, (except the few acres held by defendant, Higgins,) improving and cultivating the same up to the commencement of plaintiff's suit in December, 1887.

This court, in Hart vs. Bostwick and wife, 14 Fla., 179, held, and we think correctly, "That a possession and claim of land under an executory contract of purchase is in no sense adverse as to the one with whom the contract is made.

But that one entering under an executory contract of purchase may always hold adversely, as against all persons but his vendor;" citing Whitney vs. Wright, 15 Wend., 171 ; Adams vs. Guerard, 29 Ga., 651 ; 8 Cowan, 589 ; 15 Wend., 381 ; 9 Cowan, 550 ; 5 Cowan, 74 ; 14 Wend., 228 ; 1 Cowen, 605.

His, Coogler's, possession seems to have been open, and his claim notorious and undisputed, and such as to prevent all doubt as to the character of his entry and of his holding ; and the fact of his deed being of record coupled with his claim to the land, and with acts of possession by himself and tenant, precluded the idea of the want of knowledge on the part of Rogers, as to the character of his possession ; and from the date of the entry, and under his executory contract of March, 1880, adverse possession commenced as to Coogler in person against appellee, and it is clear that over seven years had expired before appellee commenced his action in December, 1887; and in order to establish the defense of adverse possession for seven years, appellants are not compelled to rely upon the adverse possession on the part of their grantors, Barnes and wife. We might here rest the case, but if this were not so, then if the evidence shows that Barnes and wife held adversely to Rogers prior to and at the time of the sale to Coogler, then Coogler may avail himself of such adverse possession of his grantors, and connect the same with his own, and thus avail himself of the benefits of the statute. Brandt vs. Ogden, 1 Johnson, 156 ; Wade vs. Doyle, 17 Fla., 527–8 ; Tyler on Ejectment, 908. But here we are confronted with the further question as to what constitutes adverse possession between tenants in common, or co-tenants ; and if it is proven to exist, then to enquire when it commenced, how it commenced, and to what time it continued. It seems to be conceded, that on the death of John L. May, the lands in controversy descended to his two daugh-

ters, the wives of Barnes and Rogers, respectively, as tenants in common. If this be true, and Barnes and wife went into possession of the lands in controversy, then their possession was *prima facie* the possession of Rogers and wife, and after the death of the wife of Rogers, or Rogers himself, and before the possession of Barnes and wife could be adverse as to Rogers, an actual ouster of Rogers must be proved. For in all cases where a party is in possession of lands in privity with another, or with the rightful owner, nothing short of an open and explicit disavowal and disclaimer of holding under that title and of an assertion of title in himself brought home to the knowledge of the owner, will satisfy the law; and as between co-tenants there must be an ouster by one or the other, before an action of ejectment will lie. Williams vs. Cash, 27 Ga., 507; Kirk, vs. Smith, 9. Wheat., 241; Jackson vs. Berner, 48 Ill., 203 ; Tyler on Ejectment, 476. Do the facts and circumstances, as proven in this case, show an ouster in law of Rogers, by Barnes and wife?

" Every ouster is an actual ouster, whether it be the result of positive expulsion, or whether it results from exclusive possession accompanied by such acts or facts as amount to a denial of the right of the co-tenant out of possession." Gale and wife vs. Hines, 17 Fla., 774, text; Kearnes vs. Hill, 21 Fla., 185. But this ouster must be proved, and even when the fictitious proceedings under the common law prevailing in ejectment by other means than by the " consent " rule, as by showing that the defendant held adversely, or that he denied the title of his co-tenant, or that he claimed all of the premises for himself, or denied possession to the other, or had held the sole and undisputed possession for a long course of years without payment of rent, and without any claim of any part of the profit by the other co-tenant during the whole time. Frederick vs. Grey, 10 Sreg. & awle, 12; Lodge vs. Patterson, 3 Watts,

77 ; Law vs. Patterson, 1 Watts & Serg., 191; Doe vs. Prosser, Cowp. Rep., 217 ; Tyler on Ejectment, 476.

It has been repeatedly held that exclusive possession connected with some act amounting to a denial of the rights of a co-tenant out of possession constitutes an ouster.   Gale and wife vs. Hines, 17 Fla., 774, citing 10 Wend., 419 ; 32 Cal., 499 ; Humph., 668 ; 5 Mass., 351 ; 5 Green, 482; 21 Conn., 385 ; Kearnes vs. Hill, 21 Fla., 187.   There can be no doubt of the fact that Barnes and wife held possession of the land from the death of the ancestor ; but, as before re-marked, this possession was the possession of Rogers and wife, until the death of Mrs. Rogers, and then of Rogers, as their co-tenants, at least until this possession became exclu-sive, and shown to be exclusive by some act of Barnes and wife, brought home to the knowledge of Rogers.   While it is admitted that Rogers never entered the land in person or by tenant, nor received or demanded any of the rents or profits of the lands, yet, until the commencent of litigation between the creditors of Matilda H. May and Barnes and wife, which occurred in June, 1879, there appears no act on the part of Barnes and wife inconsistent with their holding as tenants in common with Rogers.   But when this litiga-tion commenced in regard to the title to said land, Barnes and wife openly assert their title to the whole of the land. This was public and notorious. It was matter of record. It was with the full knowledge of Rogers. It was connected with the possession of the entire lands, and was continued to the date of conveyance and sale to Coogler.   This open and notorious claim to the whole of the land, coupled with the entire possession by Barnes and wife, was such an act as amounted to, and was a denial of the rights of Rogers to any part thereof, and constituted an ouster, which would have justified Rogers, if so disposed, to bring an action of ejectment against Barnes and wife for the recovery of his

undivided interest under ordinary circumstances. Gale and wife vs. Hines, 17 Fla., 774, and the authorities there cited ; Kearnes vs. Hill, 21 Fla., 187. And in the absence of evidence to show collusion between Barnes and wife and Rogers, as to this litigation, the admission of Rogers made then and there that he had no interest in the lands, is conclusive of adverse possession on the part of Barnes and wife as to him from that date.

We have already seen the effects in law of the entry by Coogler into the lands under the deed from Barnes and wife. We inquire, was this possession continuous from its inception for the period of seven years ? What constitutes a continuity of possession is not always easy to determine, and the question has been attended with much litigation. When the adverse possession has commenced and continued by the same person, the question may be settled without much difficulty ; but when continuity is held by different persons in possession, or under different rights, it is often complicated, and sometimes difficult. It is well settled that the possession need not be by the same person, and under the same rights. The claim of possession may continue unbroken by successive tenants in possession, and when this appears, the adverse possession may be just as effectual as though the premises were held by the same person for the whole period. There must be a privity and continuity of possession under a claim of title during the whole statutory period in order to make adverse possession effective to bar the entry, or to ripen the possession into title to the premises enjoyed. Brandt vs. Ogden, 1 Johns., 156 ; Doe vs. Campbell, 10 Johns., 477 ; Wade vs. Doyle, 17 Fla., 527-8, text; Tyler on Ejectment, 908.

Says this court in Doyle vs. Wade, " As to what is continuous possession must necessarily depend much and largely upon circumstances of each case as it may arise. The

use to which the property is adapted, the actual manner of its use, the circumstances of the possessor, and partly his intention, must be considered in determining it." 23 Fla., 90. To constitute adverse possession in its incipiency, the owner must be ousted, and the possession must continue adversely and uninterruptedly for the statutory period of time, which in this State is seven years. This is the fact which creates the bar, and it cannot exist if the person having the title takes actual possession in pursuance of his right, if but for a moment of time; or, if the adverse possession is at any time abandoned by the disseiser; for in so doing his adverse possession is at an end. But when a party is once ousted, it is not every entry upon the premises without permission that will disturb the adverse possession. A man may tread upon his own soil, and still be as much out of possession of it as though he were elsewhere ; but to regain possession, when thus ousted, he must assert his claim to the land. He must perform some act that will reinstate him in possession before he can regain what he lost. No entry by stealth, nor for other purposes than those connected with the right to enter, will be sufficient to break the continuity of exclusive possession in another. There cannot be at the same time two legal possessions adverse to each other of the same premises. As to adverse possession like the case at bar, our statute of 1872, Chap. 1869, McClellan's Digest, 782, provides, " When the occupant or those under whom he claims entered upon the possession of the premises under claim of title exclusive of any other rights, founding such claim upon a written instrument, as being a conveyance of the premises in question, the lands are deemed to have been possessed and occupied in the following cases ; 1. Where it has actually been cultivated or improved; or 2. Where it has been protected by substantial enclosure ; or 3. Where,

although not enclosed, it has been used for the supply of fuel, or fencing timber, for the purpose of husbandry, or for the ordinary use of the occupant.  4.  Where a known lot or single farm has been partly improved, the portion of such farm or lot that may have been left not cleared or enclosed according to the usual course or custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved or cultivated."

The testimony shows that Barnes and wife occupied the premises, a part of which were enclosed and improved, and that Coogler in person and by tenants improved the property by setting out orange trees, cultivating a part of the same, and repairing the fencing of that part enclosed. Barnes swears he took possession under a deed given to him by his wife in the name of her father, John L. May.   I went to work on the land in controversy, fenced about seven acres, plowed it and planted it in corn; this was in the spring of 1878.   Held possession right along until December, 1879, then went to Texas, leaving Coogler in possession as agent until March, 1880, when he sold to Coogler and gave bond for title.  Coogler finished paying for it in 1882, in February, and wife and I made deed.   Rogers made no claim to the land.  Coogler swears Barnes and wife were in possession of the land from 1878, until December, 1879.   Barnes moved to Texas in 1879.   I was made his agent for the 160 acres. I took immediate possession.   He, Barnes, delivered me the possession.  This was a verbal understanding, we had talked over between Barnes and myself that I should become the purchaser of this land in controversy.  A written agreement was then made, which was destroyed, because I had no further use for it after I had paid up.   I destroyed the contract and took the deed.  This paper, or agreement, was from Barnes to me.   Deed from Barnes and wife to Coogler bearing date of February 10th, 1882.   From December, 1879, I

recognized myself as the agent of Barnes, and holding as agent under and in subordination to Barnes until March 20th, 1880, when I assumed that I was owner of the land. And I have been in the possession of it and claiming it as my own property from that day until now, adversely to Rogers and everybody else. Have appropriated the rents, issues and profits of that land since March 20th, 1880, to the present time to my personal use. Have cleared, fenced and improved, built a dwelling and other houses, &c.

There is no intimation that the appellants or their grantors, after the litigation between the creditors of Matilda H. May and Barnes and wife, ever abandoned or intended to abandon the premises in a legal sense, and the conclusion is evident that the contrary was their purpose. It does not appear that the appellee ever demanded, or received any rents or profit from the appellants or their grantors, or that he ever claimed any part of the same, or that he ever attempted to make a legal entry on the land in dispute personally or by tenant, from the date of the entry in 1878 of Barnes and wife —appellants' grantors—to the commencement of this suit. But on the contrary, disclaimed all interest in the same. And all the evidence goes to show that after the ouster of Rogers by Barnes and wife, on the—day of June, 1879, when the litigation referred to commenced. and when Barnes and wife openly averred and claimed title to the whole of the said premises, the possession was adverse to the appellee. It is evident that appellants' claim of adverse possession to the lands described in the pleadings should have prevailed, and it was error to refuse a new trial in the court below.

The judgment should be reversed, and the case remanded for a new trial, and it will be so ordered.