LOUIS BOLEY, *et al.*, *Plaintiffs in Error*, v. A. M. McMILLAN, *Defendant in Eror*.

Opinion Filed November 18, 1913.

1.   To constitute color of title in ejectment it is not necessary that the deed under which plaintiff claims should so definitely describe the lands conveyed to it that there should be no uncertainty in it, and if the description is such as will enable a surveyor to ascertain and locate the land, it is admissible in evidence as color of title; but the description of the land must be sufficiently definite and certain to enable it to be identified and located, otherwise it will be held void for uncertainty.

2.   The word "included," as used in Section 1721 of the General Statutes of Florida, relating to adverse possession under color of title, means enclosed, confined, embraced, and where a written instrument is proffered in evidence as color of title, purporting on its face to convey real estate but the description of which is so defective as to fail to describe any land, such instrument is not admissible under the statute, but should be excluded for uncertainty.

Writ of error to Circuit Court, Escambia County; J. Emmet Wolfe, Judge.

Judgment reversed.

*Reeves & Watson & Pasco,* for Plaintiffs in error;

*Blount & Blount & Carter,* for Defendant in error.

SHACKLEFORD, C. J.—A. M. McMillan instituted an action of ejectment against Louis Boley, M. C. Boley and W. H. Kilbee to recover the possession of the following described real estate and also mesne profits:    :

"Beginning at the southwest corner of the A. Johnson purchase of 25 acres in the Dominges Grant, Section 34, Township 2 South, Range 30 West, in Escambia County, Florida, thence running south on a line with the west boundary of the said Johnson Purchase 587.5 feet, thence west to the northeast corner of the Prieto Grant, thence on the west boundary of the Dominges Grant to a point opposite the northwest corner of the George Main Purchase in said Grant, and thence east to the said northwest corner of said George Main Purchase, thence south on a line with the west boundary of the said George Main and A. Johnson purchases to the point of beginning; said property otherwise known as Lot 20, and the west half of Lot 24, as per subdivision of the Dominges Grant, in said Section 34, Township 2, South of Range 30 West, containing about 70 acres, to which said plaintiffs claim title, to-wit, an undivided one-half interest therein in fee simple."

The defendants filed a plea of not guilty and a trial was had before a jury, which resulted in a verdict and judgment in favor of the plaintiff. The plaintiff did not undertake to trace his title back to the Government, but introduced a tax deed from the State of Florida to C. C. Yonge, bearing date the 20th day of June, 1875, in which the entire Domingez Grant, of which the real estate in

controversy is embraced, was conveyed. This tax deed, by agreement of the respective counsel was "admitted only for the purpose of showing color of title." Having unsuccessfully attempted, at an earlier stage of the trial, to introduce in evidence a deed from C. C. Yonge to Wm. T. Waters and James Waters, dated the 14th day of July, 1884, the plaintiff again offered such deed in evidence. Thereupon the bill of exceptions shows the following proceedings:

"Defendants objected to the admission of said deed on the grounds, first, that no title had been shown in the grantor; second, there was no evidence that the grantor was in possession; third, that the description in the deed is void for uncertainty; fourth, that the deed does not describe the property sued for; and fifth, that it is immaterial and irrelevant to the issues in this case.

But the court overruled said objections, and admitted said deed in evidence and same was read to the jury, to which said ruling the defendants excepted."

The description of the land embraced in such deed reads as follows:

"Beginning at the Sw corner of the A. Johnson Purchase of 25 acres; thence running South on a line with the west boundary of the said Johnson Purchase 587.5 feet; thence West to NE corner of the Prieto Grant; thence on the west boundary of the Dominges Tract to a point opposite the NW corner of the George Main purchase; thence south on a line with the west boundary of the George Main and A. Johnson purchase to the point of beginning, situated in the County of Escambia, State of Florida."

The plaintiff also offered in evidence a deed from the heirs of James Waters, deceased to Rebecca C. Waters,

dated the 15th of March 1899, in which the same description of the land appears, to the introduction of which the defendants interposed the same grounds of objection, which was likewise overruled and an exception noted to the ruling. The plaintiff also introduced in evidence a deed from the heirs of Rebecca Waters, deceased, to Raymond W. Waters, dated the 10th day of May, 1902, and a deed from Raymond W. Waters to the plaintiff, dated the 28th day of November, 1903, in the first of which deeds the land in controversy was described as "half undivided interest in lot twenty, and one half undivided interest in west half of lot twenty-four  *  *  * in the Dominguez Grant, Section 34, Tp. 2 South. Range 30 West," and in the second of such deeds as "One-half undivided interest in lot 20 and one-half undivided interest in west half of lot 24, as per subdivision of the Dominguez Grant, Sec. 34, Tp. 2 South, Range 30 West, plan of which is hereto attached." The defendants objected to the introduction of each of these deeds on the ground "that no identification of the lots had been made, that no possession has been shown; that there has been no possession of any of the parties since 1900; that there is no adverse holding that would relate back to the possession as testified to by the witness Waters; that there was never any possession under the deeds." These objections were overruled and an exception was taken to each ruling. It is admitted by the plaintiff in his brief that, "Long subsequent to the execution of the deeds in which the description is claimed to be defective, the Dominguez Grant was platted, and the property conveyed by those deeds was designated on the plats as lot 20 and part of 24, but the deeds of which complaint is made make no reference to the lots." The plaintiff relied

upon adverse possession of the land in controversy under color of title by his predecessors in title for the requisite statutory period, and contends here that this claim is established by the evidence.

The defendants have assigned eight errors, but they are not all insisted upon or argued in detail. In fact, only one point is presented for determination, though it is raised by several assignments. As is admitted by the defendants in their brief, the sufficiency of the description of the land in the deeds from Yonge to Waters and from the heirs of James Waters, deceased, to Rebecca Waters, "is the real question in controversy." We have already copied this description, but for the sake of convenience we copy it again:

"Beginning at the Sw corner of the A. Johnson purchase of 25 acres; thence running south on a line with the west boundary of the said Johnson purchase 587.5 feet; thence west to the NE corner of the Prieto Grant; thence on the west boundary of the Dominges Tract to a point opposite the NW corner of the George Main purchase; thence south on a line with the west boundary of the George Main and A. Johnson purchase to the point of beginning, situated in the County of Escambia, State of Florida."

It is obvious that the description is incomplete and, taken literally, just as it stands, does not enclose any land whatever. It would seem to be admitted by the respective parties that the first three calls of the description are definite and capable of ascertainment, but it is contended by the defendants the fourth call fails to connect. This also is practically conceded by the plaintiff, but he contends that "the court can see at a glance that the fourth call is intended in truth for the fifth and that

by inadvertance the language of the fourth call 'from thence' (that is from the point on the west boundary of the Dominguez Grant opposite the NW corner of the George Main purchase) 'to the NW corner of the George Main purchase' was omitted." He then proceeds to add that "by reversing the calls of the deed," which, he contends, is sanctioned by the authorities which he cites, "the description will read as follows:"

"Begin at S W corner of the A. Johnson purchase thence north on a line with the west boundary of the A. Johnson and George Main purchase to a point on the west boundary of the Dominguez Grant opposite the NW corner of the Geo. Main purchase; thence on the west boundary of the Dominguez Grant to the NE corner of the Prieto Grant thence east to a point 587.5 south of the SW corner of the A. Johnson purchase, thence to the beginning."

To this contention the defendants reply that, even if the suggestion made by the plaintiff be adopted and it is assumed that the east line runs "to the northwest corner of the George Main purchase," we would still be at sea, there being "nothing to indicate the remaining boundaries of the land," adding, "there is nothing to indicate the remaining boundaries of the land; there is no presumption that we know of that the parties intended to convey a four-sided piece, and there is nothing either in the deed or the testimony to show that the parties intended to convey lots twenty and the west half of lot twenty-four."

In determining the point thus presented to us it is necessary to refer to our statute governing the adverse possession of real estate under color of title. Such statute constitutes Section 1721 of the General Statutes of Florida, which is as follows:

"1721.   (1290.)   Adverse possession under color of title.—

1.   Continued Occupation for Seven Years Required.— Whenever it shall appear that the occupant, or those under whom he claims, entered into possession of premises, under the claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree or judgment for seven years, the premises so included shall be deemed to have been held adversely; except that where the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract.

2.   Definition of Possession and Occupation Required. For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied, in the following cases:

1.   Where it has been usually cultivated or improved.

2.   Where it has been protected by a substantial enclosure.

3.   Where (although not enclosed) it has been used for the supply of fuel, or of fencing timber for the purpose of husbandry, or for the ordinary use of the occupant; or

4.   Where a known lot or single farm has been partly improved, the portion of such farm or lot which may have been left cleared or not enclosed according to the usual course and custom of the adjoining country, shall

be deemed to have been occupied for the same length of time as the part improved or cultivated."

We call especial attention to that part of the first paragraph of such section, "and that there has been a continued occupancy and possession of the premises included in such instrument, decree or judgment for seven years, the premises so included shall be deemed to have been held adversely." The defendants insist that, as the description of the real estate in the two deeds introduced by the plaintiff and upon which he relies as establishing color of title, which description we have copied above, is so fatally defective as to describe no premises, such statute can have no applicability. In other words, it is urged that no premises are "included" in such two written instruments. There is force in this contention and it merits our serious consideration. We find that Webster's New International Dictionary defines included as "Inclosed; confined; embraced." See also 22 Cyc. 62; 18 Amer. & Eng. Ency. of Law (2nd ed.) 146; 4 Words & Phrases Judicially Defined, 3499, and cases there cited. The law is thus stated in 1 Cyc. 1090: "It is elementary law that a deed is color of title only as to land actually described in it." We find that this principle is supported by the authorities cited in the note. It is doubtless true, as is stated in the next succeeding paragraph in Cyc: "Any description which, unaided by extrinsic facts, satisfies the mind that the land adversely occupied is embraced within the description contained in the deed, will of course be sufficient. So a description, though indefinite, is sufficient, if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change description, fit it to the property described by the deed. It is necessary, however, that the descrip-

tion be such that it can be rendered certain by such evidence." As was held in Dorlan v. Westervitch, 140 Ala. 283, 37 South. Rep. 382, 103 Amer. St. Rep. 35, "To constitute color of title in ejectment it is not necessary that the deed under which plaintiff claims should so definitely describe the lands admitted to be conveyed by it that there should be no uncertainty in it, and if the description is such as will enable a surveyor to ascertain and locate the land, it is admissible in evidence as color of title." So, in speaking of deeds generally, in Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, we held, "While it is true that if the description of the land conveyed in a deed is such that a surveyor, by applying the rules of surveying, can locate the same, such description is sufficient and the deed will be sustained, if it is possible, from the whole description, to ascertain and identify the land intended to be conveyed, it is also true that the description of the premises conveyed must be sufficiently definite and certain to enable the land to be identified, otherwise it will be held void for uncertainty." See also the prior decisions of this court therein cited; Walker v. Lee, 51 Fla. 360, 40 South. Rep. 881; Sherlock v. Varn, 64 Fla. 447, 59 South. Rep. 953; Jarrell v. McRainey, 65 Fla. 141, 61 South. Rep. 240. We would also refer especially to the exhaustive note, dealing with certainty of description in instruments relied upon as color of title, found on pages 708 and 709 of 88 Amer. St. Rep., where numerous authorities will be found cited. Also see the discussion in Coogler v. Rogers, 25 Fla. 853, text 877, 7 South. Rep. 391, concerning adverse possession. We would also refer to the following authorities, which have been cited to us by the defendants: Jackson v. Woodruff, 1 Cow. (N. Y.) 276, 13 Amer. Dec. 525; Wheeler v.

Spinola, 54 N. Y. 377; Luttrell v. Whitehead, 121 Ga. 699, 49 S. E. Rep. 691. We have examined the authorities cited by the plaintiff, but are of the opinion that his contention is unsound and that the principle upon which he relies has no applicability in the instant case. It follows that the court erred in admitting the deeds from C. C. Yonge to Wm. T. Waters and James Waters and from the heirs of James Waters, deceased, to Rebecca C. Waters, the description of the premises therein being void for uncertainty, and that the judgment must be reversed.

TAYLOR, COCKRELL, HOCKER AND WHITFIELD, J. J., concur.